DECISION
Relator, Nicholas Franks, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied his application for compensation for permanent total disability for the loss of one-half of the great toe under Scheduled Loss Provisions of R.C.4123.57(B), and to issue an order granting such compensation.
This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be denied. Relator has filed objections to the magistrate's decision.
In his objections, relator argues that the magistrate should have relied on the report of Dr. Logee, and the opinion expressed by Dr. Martin that relator was entitled to compensation for a total loss of use. It is not, however, the magistrate that determines which doctor's report should be relied on, rather, that decision is that of the commission. Further, while Dr. Martin may feel free to express an opinion that relator should be entitled to compensation, his legal opinion is of no import. There was some evidence to support the commission's decision that, although claimant's toe is fused at the interphalangeal joint, there is no evidence that he has sustained a total loss of use of the toe.
Therefore, upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own. Relator's objections to the magistrate's decision are overruled, and the requested writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
LAZARUS and BROWN, JJ., concur.
 IN MANDAMUS
Relator, Nicholas Franks, has filed this original action in mandamus seeking a writ compelling respondent Industrial Commission of Ohio to vacate its order denying compensation for permanent partial disability ("PPD) for the loss of one-half of the great toe under the scheduled-loss provisions of R.C. 4123.57(B), and to issue an order granting that compensation.
Findings of Fact:
1. In December 1999, Nicholas Franks ("claimant") sustained an industrial injury, and his workers' compensation claim was allowed for a crushing injury and fracture of the left great toe. Surgical repair included fusion at the interphalangeal joint.
2. In April 2000, claimant was examined by Paul Martin, M.D., who found that the interphalangeal joint was fused. The range of motion at the metatarso-phalangeal joint was slightly limited due to discomfort. There was no significant swelling. The nail was discolored and partially avulsed from the base of the nail bed. Dr. Martin expected the condition to improve and opined that claimant had not yet reached maximum medical improvement but would do so within about eight weeks. Dr. Martin imposed work restrictions and concluded that, due to the fusion procedure, claimant would probably be left with some permanent impairment, to be estimated after the condition becomes permanent.
3. In June 2000, claimant's surgeon, Owen Logee, M.D., explained that the fusion of the interphalangeal joint caused loss of that joint's mobility. He found that claimant, five months after injury, had about 50% loss of strength and dorsiflexion and plantar flexion. Claimant walked without difficulty but had not yet been able to run "satisfactorily." He could raise up on his toes with difficulty.
4. In June 2000, claimant filed a motion seeking PPD compensation under R.C. 4123.57(B) for the loss of the left great toe.
5. In July 2000, Dr. Martin addressed the claimed loss:
 I have again reviewed the medical records in this case, my April 6, 2000 report, as well as the Ohio Revised Code 4123-57(B) regarding the standards for the determination of scheduled awards. With respect to Mr. Franks' great toe, he does not meet the definition for a scheduled loss award for total loss of the great toe. In order to meet such a standard, an individual must have incurred a loss beyond the interphal-angeal joint of the great toe, which in Mr. Franks' particular case, did not occur. However, because Mr. Franks' injury did result in a fusion (ankylosis) of the interphalangeal joint, he is entitled to a scheduled award of one-half of the great toe.
6. In August 2000, Dr. Logee stated that, when he fused the interphalangeal joint, he removed pieces of the proximal end of the distal phalanx, shaping the bone to obtain a stable fusion. Thus, the toe was shortened by about 1/4 to 3/8 inch. Dr. Logee opined that this operation was equivalent to amputating one-half of the big toe.
7. In August 2000, the motion was heard by a district hearing officer who denied it. A staff hearing officer affirmed, and the commission refused further appeal.
8. In May 2001, claimant filed a motion seeking PPD compensation for the loss of one-half the toe.
9. In July 2001, a district hearing officer denied the motion:
 The * * * claimant has not met the criteria for a scheduled loss award of one-half loss of the left big toe * * *.
 There is no dispute that the claimant's left great toe is fused at the interphalangeal joint * * *. However, there is no medical evidence currently on file which establishes that the fusion at the interphalangeal joint has rendered the toe, or in this case the one-half of the toe, useless as if amputated. To the contrary, the 06/28/2001 report of Dr. Martin indicates that the claimant still maintains function despite the fusion at the interphalangeal joint.
 Pursuant to [R.C.] 4123.57, there must be loss included up to the interphalangeal joint to sustain a one-half loss of the great toe.
 The District Hearing Officer noted the holding in State ex rel. Miller v. Armstrong Air Conditioning * * *.
10. In September 2001, a staff hearing officer affirmed, noting that, despite the lack of mobility of the interphalangeal joint, there was insufficient medical evidence to substantiate the claimed loss of use. Further appeal was refused.
Conclusions of Law:
In the present action, claimant contends that the commission had a legal duty to conclude that he lost one-half of his great toe, and abused its discretion in failing to award the requested compensation.
R.C. 4123.57(B) sets forth specific amounts of compensation for the loss of enumerated body parts. Awards are not limited to loss by amputation, as a claimant may recover for the total loss of use of a listed body part. State ex rel. Walker v. Indus. Comm. (1979),58 Ohio St.2d 402. R.C. 4123.57(B) requires compensation for the following losses:
For the loss of a great toe, thirty weeks.
 For the loss of one of the toes other than the great toe, ten weeks.
 The loss of more than two-thirds of any toe is considered equal to the loss of the whole toe.
 The loss of less than two-thirds of any toe is considered no loss, except as to the great toe; the loss of the great toe up to the interphalangeal joint is co-equal to the loss of one-half of the great toe; the loss of the great toe beyond the interphalangeal joint is considered equal to the loss of the whole great toe."
R.C. 4123.57(B) expressly provides that ankylosis and contractures of the fingers or thumbs are compensated the same as amputation when they render useless a finger, thumb, or part thereof:
 For ankylosis (total stiffness of) or contractures (due to scars or injuries) which makes any of the fingers, thumbs, or parts of either useless, the same number of weeks apply to the members or parts thereof as given for the loss thereof.
This provision, which mandates scheduled-loss compensation when ankylosis is demonstrated, is explicitly limited to the fingers and thumbs, and does not apply to toes. State ex. rel Osborne v. Indus. Comm. (1995),72 Ohio St.3d 104.
According to Stedman's Medical Dictionary (1961), "ankylosis" is the fixation or stiffening of a joint. Here, the joint was fixed, or fused, surgically. In Osborne, supra, the court found that the statute mandated compensation on proof of ankylosis only when the fingers and thumbs were involved. The court concluded that the legislature intended to treat ankylosis of the toes differently from ankylosis of the fingers, given the different functions of fingers and toes.
Accordingly, although the commission must find the "loss" of a finger when it is fixed, the statute permits the commission to consider a variety of factors in determining loss of a toe, including the factor of the joints' mobility. In sum, ankylosis of a toe joint does not automatically mean the loss of the toe joint, but it is a factor that the commission considers when determining whether the claimant has lost the use of the toe (or half the toe). See State ex rel. Miller v. Armstrong (2000), 90 Ohio St.3d 434.
In the present action, the claimant did not lose the distal end of the bone at the toe's tip. Rather, the claimant lost some of the other end of the bone, at the location of the joint. He also lost mobility of the interphalangeal joint. Under Miller and Osborne, the loss of mobility of that toe joint is not automatically equivalent to "the loss of" that joint, but it was a factor for the commission to consider in determining whether claimant lost one-half of the use of his toe. In short, the commission was not required to deem the joint a loss simply because it was fixed, as it must do with a finger joint. See Miller, supra.
Based on Miller and Osborne, the magistrate concludes that the medical evidence did not require the commission to find that claimant sustained the loss of use of one-half the toe. Although there was evidence of loss of some bone tissue, and evidence that the interphalangeal joint was fixed, there was evidence that claimant retained much of the functional use of his toe. The commission was within its discretion to conclude that claimant's evidence did not prove that he lost half the function of his toe.
Dr. Martin made clinical findings on which the commission relied, but his opinion as to loss of use of one-half the toe was a legal conclusion. Dr. Martin's explicitly based his legal opinion on his understanding of R.C. 4123.57, and the commission was not bound by Dr. Martin's legal opinion on the ultimate issue before the commission for determination. The commission was within its discretion to rely on Dr. Martin's clinical findings and to make its own conclusions of law.
The magistrate concludes that claimant has not met his burden of proving that the evidence imposed a legal duty on the commission to grant PPD compensation for a scheduled loss, and recommends that the court deny the requested writ of mandamus.